IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                   **Case No. 07-40150-01-RDR**

MICHAEL S. WAGNER,

        Defendant.

---

## MEMORANDUM AND ORDER

Defendant is facing charges in connection with various small airport burglaries committed in Colorado, Oklahoma, Texas and Kansas.  Defendant was arrested on January 22, 2006 after he allegedly burglarized hangers at the Emporia Municipal Airport near Emporia, Kansas.  Many hours later he waived his <u>Miranda</u> rights and made incriminating statements which helped lead to the charges in this case.  The charges allege the transportation of stolen goods, wire fraud and mail fraud.  This case is now before the court upon defendant's motion to suppress.  The major dispute in the motion to suppress is whether there was probable cause to arrest defendant at the time he was arrested.  In a state court case against defendant alleging burglary of the Emporia airport and other charges, the trial court and the Kansas Court of Appeals held that there was not probable cause to arrest defendant at the time he was arrested.

The court has conducted an evidentiary hearing upon the motion to suppress and is prepared to rule.

EVIDENCE BEFORE THIS COURT

The court heard testimony from Adam Thompson.  Thompson was an officer with the Lyon County Sheriff's Office on January 22, 2006. In the early morning hours he was patrolling near the Emporia, Kansas municipal airport.  It was a cold night.  At about 2:17 a.m. Thompson drove past a pickup truck which was parked partially off the road facing south.  Thompson turned his vehicle around to check the license plate.  The license plate was registered to Michael Wagner.  There was no indication from the dispatcher that Wagner was wanted on any criminal matter.  The truck had a Sedgwick County, Kansas license plate on the back and a Colorado license plate on the front.  Wichita is the largest city in Sedgwick County, which is about one hour and a half from Emporia.

There was no one in the truck, but a window was half down. The truck's hood was warm to the touch.  Inside the truck Thompson could see a cell phone on the dash board and keys in the ignition. He also saw two bags which looked like they might contain laptop computers and a hard case with "Cessna" printed on it.  The hard case looked like it might contain GPS equipment.  Obviously, "Cessna" is a name associated with aircraft.  There is a large Cessna manufacturing plant in Wichita, according to the testimony.

Thompson had a strong feeling that something was going on at the airport.  Airport buildings were two-tenths or one-quarter of

2

a mile away from the truck.  He called for backup and drove quickly
to the airport to see if he could see something.  He did not, so he
went back to the truck and waited for the backup officers.  Three
deputies arrived.  The wind was calm and the officers thought they
heard motion or noises in the grass in the field which was inside
the airport's property line on the other side of the fence from the
truck.  The fence was a rusty four-strand barbed wire fence.  The
officers hopped the fence and looked in the field.  Before they
left Thompson reached inside the truck and removed the keys from
the ignition.  The officers did not find anything while searching
the field.  As they returned to the truck, however, they noticed a
spot in the fence line near the truck where the top three strands
of wire had been freshly cut.  The cut ends were shiny, in contrast
to the length of the rusty wire.

The officers decided to expand their search of the airport
field area.  Again, they found nothing.  They decided to redeploy
to places where the pickup truck could be stopped if it was driven
away.  Before doing so, Thompson put the keys back in the truck's
ignition.

There were only two ways the truck could go.  It could proceed
south and then east toward a main highway (K-99), which would lead
to Emporia and a main road to Wichita.  Or, the truck could turn
around, drive north and then around the airport eventually driving
south and then turning west toward a more isolated, rural area.

The truck turned around and took the route leading to the more remote area.

Lyon County Sheriff's Deputy Danny Broyles testified that he turned on his emergency lights to pull the truck over.  It was about 3:20 a.m.  The truck pulled over promptly.  Defendant Michael Wagner, the driver of the truck, was ordered out of the truck at gunpoint and told to lie face down on the ground.  He did not resist.  He was handcuffed and then placed in a patrol vehicle.  He was given a Miranda warning at about 3:40 a.m.

Defendant was dressed in a grey sweatshirt and camouflage pants with black boots.  There was a female passenger in the truck.  She was dressed in all black clothing.  Following defendant's handcuffing and arrest, he and his female companion were interviewed separately at the scene of the arrest.  They gave different versions of why they were on their trip, although each of them said that they stopped near the airport to have sex in the field.  The officers felt they were lying.  Officer Thompson thought there was a good chance the electronic equipment in the truck was stolen.  He removed a laptop computer from defendant's truck and reported the serial number to his dispatcher.  The dispatcher reported that the computer was stolen from Denver, Colorado.  Then, Officer Thompson called the Emporia Police Department and asked them to look at the Emporia airport for evidence of a crime.  He did this because, although the airport was

4

outside of the city limits, the Emporia Police Department had jurisdiction over the airport. Sometime after defendant was handcuffed and taken into custody, the Emporia Police Department investigated and determined that the hangars of the Emporia airport had been burglarized.

At about 1:45 p.m. defendant was questioned by federal and local officers. Defendant was still in custody, wearing an orange jumpsuit. Defendant was coherent. He seemed well-educated and indicated that he was close to receiving a bachelor's degree. He asked several questions. He was offered food and drink. A <u>Miranda</u> warning was administered. Defendant waived his <u>Miranda</u> rights orally and in writing. He gave an incriminating statement implicating himself in several airport burglaries. No coercion was applied to defendant, although he was told that it might be easier for him if he cooperated.

During his testimony Officer Thompson stated that while he was investigating he felt that some crime was being committed, but he did not know what the crime was. He thought there was a good chance that equipment was being stolen at the airport, although "anything could be going on." Burglary, criminal damage, criminal trespass, even terrorism, were mentioned by Thompson as possibilities during his testimony before this court. Deputy Broyles testified that he thought the airport hangars were being burglarized. In the report he wrote following the arrest in this

matter, Deputy Broyles stated that he believed a "crime might be being committed," but he did not specify that the crime was burglary.

STATE COURT PROCEEDINGS

Burglary charges, criminal damage charges, theft charges and a criminal trespass charge were brought against defendant in Kansas state district court. State v. Wagner, 179 P.3d 1149, 1153 (Kan. App. 2008). Defendant filed a motion to suppress. The state district court held that defendant was arrested without probable cause when he was ordered out of his vehicle and onto the ground at gunpoint, and then handcuffed. But, the court did not suppress the incriminating statements defendant made the afternoon following his arrest or physical evidence obtained after those statements, on the grounds that the evidence was sufficiently attenuated from the illegal arrest. Following this decision, defendant waived his right to a jury trial and agreed to submit the case to the trial court on stipulated facts. The State agreed to dismiss several counts of the complaint. The trial court found defendant guilty of three counts of burglary. Defendant reserved his right to appeal the trial court's findings on the suppression motion.

On appeal, the Kansas Court of Appeals held that defendant was arrested at the roadside without probable cause and that the statements he made the following afternoon were not attenuated from the illegal arrest. Wagner, 179 P.3d at 1154-61. Therefore,

6

defendant's state court convictions were vacated and the case was sent back to the state district court for further proceedings.

ARGUMENTS FOR AND AGAINST SUPPRESSION

Defendant contends that this court should follow the ruling of the Kansas Court of Appeals.  Defendant also contends that this prosecution violates the government's "Petite policy" against bringing a prosecution based upon the same transaction as a prior state prosecution absent compelling federal interests.  The government argues that there was probable cause to arrest defendant at the roadside on January 22, 2006 and, therefore, there was no illegal arrest upon which to base an order for suppression.  The government also denies that defendant is entitled to relief on the basis of the Petite policy.

ANALYSIS

Petite policy

The Tenth Circuit and other circuits have held that the Petite policy does not "confer enforceable rights upon criminal defendants."  U.S. v. Barrett, 496 F.3d 1079, 1120 (10th Cir. 2007).  Therefore, the policy does not provide grounds to grant the motion to suppress or dismiss the indictment in this case.  It is also significant to note that the indictment in this case involves alleged criminal transactions with ties to other states than Kansas and, accordingly, this prosecution is not in violation of the Petite policy.

7

Probable cause standards

There is no dispute in this case that defendant was arrested when he was handcuffed while lying on the ground. The issue is whether there was probable cause to support such a warrantless arrest.

"In evaluating whether the events leading up to [an] arrest amount to probable cause, we ask whether an objectively reasonable officer could conclude that the historical facts at the time of the arrest amount to probable cause." Cortez v. McCauley, 478 F.3d 1108, 1116 (10th Cir. 2007) (en banc).

"Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." U.S. v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . . That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (interior citations omitted). Probable cause to believe that a person has committed even a minor crime in an officer's presence is sufficient to justify a warrantless arrest. Virginia v. Moore, 128 S.Ct. 1598,

1604 (2008) (warrantless arrest for driving on a suspended license satisfied federal constitution even though Virginia state law did not authorize arrest for such a misdemeanor offense).  Several courts have held that the "in the presence" condition for a warrantless misdemeanor arrest is not a constitutional requirement. U.S. v. McNeill, 484 F.3d 301, 311 (4th Cir. 2007) (citing cases from four other circuit courts).

It is not necessary that the arresting officers know at the moment of the arrest precisely what crime has been committed.  In United States ex rel. Frasier v. Henderson, 464 F.2d 260 (2nd Cir. 1972), the police were confronted late at night with two men running out of a deserted park away from people yelling.  One of the men was carrying a shopping bag.  They fled when they were told to stop. One of the men was arrested as he was sitting on the top step of the stoop to a small apartment building.  He was leaning backwards, pushing the shopping bag behind the vestibule doors.  The Second Circuit stated:

> We recognize that even though Officer Keane had reasonable cause to believe that a serious crime had been committed, he could not at the crucial moment determine precisely what crime that was - - whether, for example, it was robbery, armed robbery, or burglary.  But common sense and authority suggest that this inability should not invalidate an otherwise proper arrest.

464 F.2d at 263.  The Tenth Circuit cited this language approvingly in U.S. v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001) (finding probable cause to believe that a crime - either bank robbery or

possession of stolen property - had occurred).

In U.S. v. Anderson, 923 F.2d 450 (6th Cir.) cert. denied, 499 U.S. 980 (1991), the police saw a heavily loaded small car back out of a residential driveway and drive by the officers at a high rate of speed.  The officers knew the occupants of the residence were white and saw that the occupants of the small car were black.  The car was so heavily loaded that the chassis was rubbing against the right tire.  The officers stopped the car and questioned the driver and the passenger who later became the defendants in the case.  The officers noticed many things loaded on the car's back seat covered with a quilt.  They received false and inconsistent answers from the driver and the passenger.  The officers suspected that the goods in the car were stolen.  So, they took the car's occupants to the county jail for further investigation.  In doing so, the officers told the men that they were free to leave, but that they could not drive the car because neither defendant was carrying a driver's license.

In Anderson, the court held that, assuming the defendants were arrested on the highway, there was probable cause for the arrest even though the officers did not subjectively believe they had probable cause and the officers were not aware that the defendants had committed any particular burglary.  "[T]here is probable cause if a succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent

10

course of conduct was less likely than a criminal one." 923 F.2d at 457 (quoting, 1 W. LaFave, Search and Seizure, § 3.2(e) at 595) (interior quotations and citations omitted). The court concluded that there was probable cause for the arrest even though the officers did not know whether the defendants were burglars or in possession of stolen property or perpetrators of other crimes relating to the goods. Id. See also, U.S. v. Prandy-Binett, 995 F.2d 1069, 1073-74 (D.C.Cir. 1993) ("It is enough that [the arresting officers] have probable cause to believe the defendant has committed one or the other of several offenses, even though they cannot be sure which one.").

The Supreme Court has generally described the probable cause standard as follows:

> The long-prevailing standard of probable cause protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection. . . . On many occasions, we have reiterated that the probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. . . .
> The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. . . . We have stated, however, that the substance of all the definitions of probable cause is a reasonable ground for belief of guilt. . . .

Maryland v. Pringle, 540 U.S. 366, 370-71 (2003) (interior quotations and citations omitted).

11

Probable cause analysis

Officer Thompson and the other officers involved in the arrest of defendant had the following information at the time defendant was handcuffed and taken into custody on the roadside:  1) it was the early morning hours of a cold winter night; 2) defendant's pickup truck had a Sedgwick County license plate and a Colorado license plate, not a local license plate; 3) the vehicle had been parked off a rural road approximately one-quarter mile from the hangar buildings at the Emporia airport - it was the only vehicle along a deserted road; 4) it was parked with at least one window down, the keys in the ignition, and a cell phone on the dashboard; 5) the hood was warm, indicating that it had been driven recently; 6) the truck contained what appeared to be laptop computers and a hard case with "Cessna" printed on it; 7) motion noises were heard in the field in the direction of the airport hangars; 8) the airport's barbed wire fence had been freshly cut at a place 15 feet from defendant's truck; 9) Officer Thompson did not see anything at the airport when he briefly drove there and back; 10) Officer Thompson and the other officers did not see anything when they twice searched the airport field in the vicinity of defendant's parked vehicle; 11) when defendant drove the truck away, he turned around and headed in a direction taking him away from the main roads and the nearest populated area; 12) defendant did not attempt to flee in his truck when he saw officers signaling him to pull over; and 13) when the

12

officers stopped the vehicle, defendant was wearing camouflage pants and his passenger was wearing all black clothing.

Considering all of these facts, the court believes the officers had a reasonable belief that defendant had committed some crime involving the property of the airport prior to arresting defendant. The crime could have been burglary or attempted burglary. See K.S.A. 21-3715. It would have been reasonable to believe, for instance, that the laptop computers and the Cessna case had been stolen from the airport and that defendant was making another trip to the hangars when the officers were investigating the truck parked partially off the road. The crime could have been criminal trespass. See K.S.A. 21-3721. There were grounds for a reasonable belief that defendant had entered fenced property upon which he was not authorized or privileged to enter. The crime could have been criminal damage to property. See K.S.A. 21-3720. A fence had been freshly cut near defendant's truck.

CONCLUSION

The court finds that defendant has no rights under the Petite policy, and that there was probable cause to arrest defendant. Therefore, the court shall deny defendant's motion to suppress.

**IT IS SO ORDERED.**

Dated this 21st day of July, 2008 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge

13